United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN AIRLINES FLOW-THRU PILOTS COALITION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALLIED PILOTS ASSOCIATION, et al., <br><br> Defendants. | Case No. 15-cv-03125-RS <br><br> **ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND** |

## I. INTRODUCTION

This motion to dismiss presents the question of what plaintiffs must prove (and, therefore, what facts they must plausibly plead) to hold an employer jointly liable with a union for breach of the union's duty of fair representation. The named plaintiffs in this putative class action are five individual pilots and an unincorporated association of more than 150 similarly-situated pilots who originally were employed by "American Eagle"—a collective name for several regional affiliates of American Airlines. In 1997, American Eagle pilots became employees of American Airlines by virtue of a so-called "Flow-Thru Agreement" executed among the airline companies and the affected unions. Plaintiffs, who refer to themselves and the putative class members as "Flow-Thru-Pilots" (FTPs), acquired certain rights under that agreement with respect to when and how they would be offered positions flying for American Airlines, and what their seniority status would be among American Airlines pilots. The FTPs also came under the representation of the union for American Airlines pilots, defendant Allied Pilots Association ("The Union").

Plaintiffs contend that the Union has subsequently discriminated against them and all other FTPs in connection with (1) the integration of former TWA pilots into the American Airlines workforce in the early 2000s, and (2) the more recent and ongoing absorption of former US Airways pilots into American Airlines employment.  In essence, plaintiffs allege that the Union has placed the interests of former TWA and US Airways pilots above those of the FTPs in subsequent bargaining with American Airlines, with resulting negative impacts to the FTPs' seniority status, service credits, pay, and other benefits.

The Union has answered the First Amended Complaint, and is not party to the present motion.  American Airlines (hereafter "American") moves to dismiss the First Claim for Relief, which asserts breach of the Union's duty of fair representation primarily in connection with the alleged preferences given to former TWA pilots, and which seeks to hold American liable for past and future damages on grounds that it "joined with [the Union] in discriminating against FTPs."[1] American contends that even assuming a union has negotiated agreements with the intent or effect of discriminating against some of its members, the employer may not be held liable absent allegations (and ultimately proof) that the employer itself engaged in discriminatory conduct against the plaintiffs when the agreements at issue were negotiated.

While neither party points to any controlling legal precedent, American's argument is persuasive that it cannot be liable for breach of a duty that ultimately is owed *by the Union*, merely because it entered into agreements with the Union allegedly knowing of the discriminatory effects and/or intent against FTPs.  As the complaint alleges no facts showing discriminatory conduct or other breach of duty by American itself, the motion to dismiss will be granted, with leave to amend.

## II.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the

---

[1] American does not challenge its inclusion as a defendant in the Second Claim for Relief, which seeks to enjoin it from using any "integrated seniority list" that may result from the currently-ongoing process to merge the US Airways workforce into American.

1  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not
2  required," a complaint must have sufficient factual allegations to "state a claim to relief that is
3  plausible on its face." *Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*,
4  550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows
5  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
6  *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully."  *Id.*
7  The determination is a context-specific task requiring the court "to draw in its judicial experience
8  and common sense."  *Id*. at 1950.

9       A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil
10 Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of*
11 *Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may
12 be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts
13 alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
14 (9th Cir. 1990).  When evaluating such a motion, the court must accept all material allegations in
15 the complaint as true, even if doubtful, and construe them in the light most favorable to the non-
16 moving party.  *Twombly,* 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted
17 inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."
18 *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at
19 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory
20 statements," are not taken as true).

21
22                             III. DISCUSSION
23      The First Amended Complaint sets out in considerable detail the circumstances that
24 plaintiffs contend constituted improper and discriminatory treatment of the IFPs in agreements
25 reached between the Union and American.  The sole basis advanced for holding American liable,
26 however, appears at paragraph 39:
27          [American] has entered into the agreements with [the Union] alleged
28

ORDER GRANTING MOTION TO DISMISS
CASE NO. 15-cv-03125-RS

3

>in paragraphs 23 and 27 *knowing that these agreements would adversely affect and discriminate against FTPs and knowing that [the Union] intended to discriminate against FTPs in such agreements.*

(Emphasis added.)

As an initial matter, it is arguable that these averments of American's "knowledge" of discriminatory intent by the Union, and discriminatory effect of the agreements, would be too conclusory even assuming mere knowledge of the Union's alleged breach of its duties were a sufficient basis for imposing liability against American. For purposes of this motion, however, plaintiffs may be given the benefit of the doubt that the facts they have alleged are sufficient to support inferences that: (1) American knew that the agreements the Union was negotiating had discriminatory negative effects on the FTPs; (2) American knew the Union intended those effects, and even; (3) American knew such conduct by the Union was a violation of its duty to the FTPs of fair representation. The question remains whether American can be held liable simply because it entered into the agreements with that knowledge, even though American itself does not directly owe a duty of fair representation to FTPs.

Plaintiffs rely heavily on *Richardson v. Texas & N.O. R. Co.*, 242 F.2d 230 (5th Cir. 1957), in which the employer railroad was held to face potential liability for entering into collective bargaining agreements with a union that discriminated against employees on the basis of race. Although language in *Richardson* supports plaintiffs' argument that an employer can be liable if it "join[s] in causing or perpetuating a violation" of a union's duty, the case arose in very different factual circumstances, and is not controlling law here.

Plaintiffs also point to other out-of-circuit authority, *Bennett v. Local Union No. 66*, 958 F.2d 1429 (7th Cir. 1992), for the proposition that an employer can be held jointly liable where the union and the employer each "actively participated in the other's breach." *Bennett*, however, was a "hybrid breach of contract/duty of fair representation action brought under section 301 of the Labor Management Relations Act," 958 F.2d at 1433. The opinion expressly stated, "[t]o prevail against either the Company or the Union, the plaintiff must establish both that the

Company breached the collective bargaining agreement and that the Union breached its duty of fair representation." *Id.* at 1433. Thus, while there may be some overlap, even in a hybrid action an employer's liability is primarily based on its own duties under the collective bargaining agreement, rather than some form of vicarious liability for the union's breach. Here, where there is no allegation of any breach of the collective bargaining agreement, there is even less basis for imposing liability against the employer.

For its part, American places great emphasis on the district court decision in *Rakestraw v. United Airlines, Inc.*, 765 F. Supp. 474 (N.D. Ill. 1991), *aff'd in part, rev'd in part*, 981 F.2d 1524 (7th Cir. 1992). There, the airline employer was found not liable for "collusion" in the union's breach of duty, where the evidence failed to show it acted in "bad faith or discriminated against plaintiffs in accepting [the union's] proposal" for a contract that severely disadvantaged a particular subgroup of pilots. *See* 765 F. Supp. at 493-94. While *Rakestraw* is at most persuasive, not controlling, authority, it does support the notion that merely agreeing to a union's contractual demands, even with knowledge that the union may not be advocating for all its members fairly, is not a sufficient basis for imposing liability on an employer.

In the absence of Ninth Circuit authority on point, the issue boils down to the more general and basic question of when it may be appropriate to hold one entity liable for another's breach of duty. Under such general principles, conduct that rises to the level of "collusion" almost certainly suffices. Plaintiffs have not shown, however, that it would be appropriate to impose liability where the employer is charged with nothing more than having acceded to the demands of the Union, even with knowledge of facts from which it might be inferred that the Union was not fulfilling its duty of fair representation to all of its constituents.

A union does not automatically breach the duty of fair representation every time it negotiates for contracts in which some of its members are treated differently than others. At least outside contexts such as discrimination against protected classes, the onus should not be on the employer to evaluate and consider whether distinctions a union draws among its members are appropriate. Thus, something more than merely acceding to union demands must be alleged and

proven to impose liability on an employer for "colluding" in a breach of what ultimately remains the union's duty.

## IV. CONCLUSION

American's motion to dismiss the first claim for relief insofar as that claim is directed at American is granted. American will remain in this action as a defendant, subject to plaintiffs' prayer for injunctive relief under the second claim for relief. The detailed allegations of the First Amended Complaint, and the nature of the arguments they offered in opposition to the present motion, strongly suggests that their attempt to hold American liable in damages under the first claim for relief fails because this order rejects the legal premise of the claim, rather than because there are facts supporting liability that exist, but which they did not plead. Nevertheless, plaintiffs will be given the opportunity to amend the first claim for relief to attempt to state a claim against American Airlines, taking into account the preceding discussion.

At the hearing, counsel for the Union stated on the record a willingness to stipulate to plaintiffs amending the second claim for relief as well. If plaintiffs wish to do so, they should confirm such a stipulation with both defendants, and then may include such amendments in a Second Amended Complaint, which should be filed no later than January 22, 2016.

**IT IS SO ORDERED**.

Dated: December 17, 2015

_____
RICHARD SEEBORG
United States District Judge