United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN AIRLINES FLOW-THRU PILOTS COALITION, et al., | Case No. 15-cv-03125-RS |
| Plaintiffs, | |
| v. | **ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND CLASS CERTIFICATION** |
| ALLIED PILOTS ASSOCIATION, et al., | |
| Defendants. | |

## I.  INTRODUCTION

The named plaintiffs in this putative class action are five individual pilots and an unincorporated association of more than 150 similarly-situated pilots who originally were employed by "American Eagle"—a collective name for several regional affiliates of American Airlines.[1]   In 1997, Eagle pilots became eligible to become pilots at American by virtue of a so-called "Flow-Thru Agreement" executed among the airline companies and the affected unions. Plaintiffs, who refer to themselves and the putative class members as "Flow-Thru-Pilots" (FTPs), acquired certain rights under that agreement with respect to when and how they would be offered positions flying for American, and what their seniority status would be among American pilots. The FTPs would also come under the representation of the union for American pilots, defendant

---

[1]  Hereinafter "Eagle" will be used to refer to American Eagle, and "American" will denote American Airlines.

1  Allied Pilots Association ("The Union")—at least once they began flying at American.  A disputed

2  issue in the present motion for summary judgment is whether the Union owed any duty to FTPs

3  who had not yet obtained positions at American.

4  Plaintiffs contend that the Union has subsequently discriminated against them and all other

5  FTPs in connection with (1) the integration of former TWA pilots into the American workforce in

6  the early 2000s, and (2) the more recent and ongoing absorption of former US Airways pilots into

7  American employment.  In essence, plaintiffs allege that the Union has placed the interests of

8  former TWA and US Airways pilots above those of the FTPs in subsequent bargaining with

9  American, with resulting negative impacts to the FTPs' seniority status, service credits, pay, and

10  other benefits.

11  The Union now seeks summary judgment and plaintiffs seek class certification.  For

12  reasons explained below, summary judgment will be granted in part, and the class certification

13  will be granted as to the remaining claim.

14

15  II.  DISCUSSION

16

17  A.  SUMMARY JUDGMENT

18  1.  Legal Standard

19  Summary judgment is proper "if the pleadings and admissions on file, together with the

20  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

21  party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary

22  judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex v.*

23  *Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of

24  informing the district court of the basis for its motion, and identifying those portions of the

25  pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate

26  the absence of a genuine issue of material fact."  *Id*. at 323 (citations and internal quotation marks

27  omitted).  If it meets this burden, the moving party is then entitled to judgment as a matter of law

28

United States District Court
Northern District of California

1  when the non-moving party fails to make a sufficient showing on an essential element of the case

2  with respect to which he bears the burden of proof at trial.  *Id*. at 322-23.

3  　　　　The non-moving party "must set forth specific facts showing that there is a genuine issue

4  for trial."  Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly

5  supported motion for summary judgment simply by alleging some factual dispute between the

6  parties.  To preclude the entry of summary judgment, the non-moving party must bring forth

7  material facts, *i.e*., "facts that might affect the outcome of the suit under the governing law . . . .

8  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty*

9  *Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show

10  that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.*

11  *Zenith Radio*, 475 U.S. 574, 588 (1986).

12  　　　　The court must draw all reasonable inferences in favor of the non-moving party, including

13  questions of credibility and of the weight to be accorded particular evidence.  *Masson v. New*

14  *Yorker Magazine, Inc*., 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475

15  U.S. at 588 (1986).  It is the court's responsibility "to determine whether the 'specific facts' set

16  forth by the nonmoving party, coupled with undisputed background or contextual facts, are such

17  that a rational or reasonable jury might return a verdict in its favor based on that evidence."  *T.W.*

18  *Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).  "[S]ummary

19  judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such

20  that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

21  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

22  non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587.

24  　　　　　　　2.  First claim for relief

25  　　　　The first claim for relief of the operative Second Amended Complaint alleges the Union

26  breached its duty to plaintiffs of fair representation by negotiating and agreeing to "Discriminatory

27  LOS [length of service] Provisions."  In essence, the dispute arises because under the 1997 Flow-

thru agreement, FTPs were not entitled to receive LOS credit for the time they flew at Eagle before joining American.  At the time this agreement was reached, of course, the FTPs were at the bargaining table with their own union.  The arrangement might not have led to future disputes had it not been for (1) the post- 9/11 downturn in the industry that led to a multi-year hiring freeze at American, and (2) American's merger with the bankrupt TWA, which resulted in a large number of TWA pilots ("the TWA staplees") coming into competition with the FTPs for available jobs at American.

The complaint sets out an extensive history of events in the collective bargaining process over the years that plaintiffs contend reflect the Union's discriminatory conduct against FTPs and in favor of other groups of pilots, including but not limited to the TWA staplees.  The first claim for relief incorporates all those allegations, and asserts they constitute the breach of the Union's duty of fair representation.  The Union's present motion contends, and plaintiffs do not dispute, that there are two basic categories of claims:  (1) those arising from the negotiation of so-called "Letter G" as part of a collective bargaining agreement made in 2015, and (2) all other claims, which relate to earlier negotiations and events.  The Union contends that the "all other claims" are time-barred, and fail substantively because plaintiffs were not represented by the Union at the time of the events in question.  The Union further contends the claims arising from Letter G fail on the merits.

### a. All other claims

The Union asserts, and plaintiffs do not contest, that a six-month statute of limitation applies to claims for breach of the duty of fair representation.  The Union argues plaintiffs' fundamental challenge is to the system created in 1997 by the Flow-Through agreement, under which the FTPs would not receive LOS credit for time at Eagle.  There can be no dispute that claims relating to that agreement are long since time-barred.  Plaintiffs, however, are complaining about how other groups of pilots were treated in mergers that took place more recently. Nevertheless, the most recent of those mergers took place with USAir in 2013, and its pilots were

United States District Court
Northern District of California

1    paid pursuant to the arrangement plaintiffs are now challenging.  This action was not filed until

2    approximately 18 months later, well outside the limitations period.

3          Plaintiffs' opposition to the motion first argues that the statute of limitations cannot bar

4    claims arising from Letter G. While that is true, the Union has not argued otherwise.  Plaintiffs

5    next argue that some or all of the "other claims" can be deemed timely because they sent a number

6    of letters of complaint to the Union which went unanswered.  Plaintiffs rely on Third Circuit

7    authority for the notion that "so long as the Union has held out a 'ray of hope' that it has not

8    abandoned the employee's interests, the limitations period does not accrue until that ray of hope is

9    extinguished." *See Bensel v. Allied Pilots Assn.*, 387 F.3d 298, 305 (3rd Cir. 2004).  The Union

10   responds that "ray of hope" doctrine is a Third Circuit anomaly, criticized and never adopted

11   elsewhere.

12         Even assuming the basic principle of *Bensel* is generally consistent with Ninth Circuit law,

13   plaintiffs have failed to show that the letters they sent would have extended the statute of

14   limitations with respect to any of the events alleged in the complaint (putting aside the 2015

15   negotiations culminating in Letter G).  Moreover, even if under some circumstances a union's

16   failure to respond to members' correspondence might toll the statute of limitations, there would be

17   no basis to conclude that the sending of such letters could *revive* claims as to which the statute had

18   already expired.

19         Plaintiffs, of course, may be able to introduce evidence of the history of their relationship

20   with the union, subject to all of the rules of evidence, if they can show it is relevant to establishing

21   discriminatory motive or intent.[2]  Plaintiffs, however, may not pursue claims arising from those

22   prior events, as the undisputed facts establish that claims other than those related to Letter G are

23   time-barred.[3]

24   _____

25   [2]  The Union, of course, may contend that it had every right to be in an adversarial relationship
     with FTPs prior to the time they became employed at American.  Resolution of that issue must

26   await a later day.

27   [3]  In light of this conclusion, the Union's further argument that it owed no duty of representation to
     the FTPs at the time of the events in question will not be reached.  As noted above, the Union may

28

United States District Court
Northern District of California

*b. Letter G claims*

Under "Letter G" of the 2015 collective bargaining agreement, pilots returning to American from furlough are eligible for up to two years of LOS credit, which represents a change from prior practice that such credit did not accumulate during furlough.  The credit has apparently been made available to TWA staplees, even if they were furloughed from TWA, and thus had not previously flown for American *per se*.  Plaintiffs complain that the same or similar LOS credit should be available to them, as they were essentially in the same position as the TWA staplees—waiting for openings at American.

For purposes of this motion, the Union does not contend that the statute of limitations bars this claim or that it owed no duty to the FTPs in the relevant time frame.  Instead, the Union seeks summary judgment on the merits of the question as to whether it breached its duty to plaintiffs.

The Union first asserts that no reasonable jury could find that it *discriminated* against the FTPs by negotiating Letter G, because, in the Union's view, Letter G served the legitimate Union purpose of benefitting those pilots who had suffered the specific harm of being furloughed.  The FTPs were never furloughed.  While they characterize their position as functionally equivalent to that of the TWA staplees (both groups had to wait years for jobs to become available at American), in the Union's view, the FTPs were never laid off from anything, and therefore had not been harmed in the same way. For the same basic reasons, the Union insists no jury could find it acted *arbitrarily* or in *bad faith*.  Finally, the Union contends no reasonable jury could find *causation* because there is no evidence American would have acceded to any demands to give LOS credits to the FTPs—particularly in light of the original Flow-Through agreement to the contrary.

Although the question is close, the Union has not established that summary judgment in its favor is warranted on the present record.  It may be that some of plaintiffs' evidence of hostility

---

still offer that argument to explain why the prior history does not show improper prejudice or discrimination.

CASE NO. 15-cv-03125-RS

towards Eagle pilots involves specific American pilots (as opposed to the Union) or relates to time periods in which the Union was appropriately in an adversarial, or semi-adversarial position to them; nevertheless, plaintiffs have pointed to what may plausibly be characterized as a pattern of having been treated less favorably than those pilots arriving at American from other "mainline" carriers.  While the distinction between those pilots who had been "furloughed" and those who had not may ultimately be accepted by a trier of fact as an appropriate one for the Union to have made, that conclusion is not subject to determination as a matter of law.  Finally, although plaintiffs may face an uphill battle to show that American would have agreed to extend LOS credit to them had the Union pursued it, they have made an adequate showing to prevent summary judgment against them for lack of causation.

3.  Second claim for relief

Plaintiffs' second claim for relief has two elements. The first arose from a stipulation and proposal the Union previously submitted in an arbitration regarding how the seniority lists for American and USAir pilots will be integrated following the merger between the two airlines.  That proposal has been withdrawn and replaced with a new stipulation and proposal that plaintiffs support.  The claim is therefore moot. Plaintiffs' tepid argument that the Union could change its mind is unavailing because the matter has already been submitted for decision, and because the mere theoretical risk would not have been sufficient to support injunctive relief in any event.

The second element of the claim relates to the Union's current position in the arbitration. While plaintiffs and the Union agree that longevity should *not* be a factor in integrating the seniority lists, plaintiffs fault the Union for not having advocated to include service at Eagle *if* longevity ultimately is taken into account.  This claim, however, is not ripe, as there has been no decision negatively impacting plaintiffs.

Summary judgment will therefore be granted on the Second Claim for relief, on grounds that it is in part moot, and in part unripe.  This ruling does not preclude plaintiffs from seeking leave to amend their complaint, or from filing a new action (whichever may be appropriate) should

United States District Court
Northern District of California

United States District Court
Northern District of California

an actionable dispute regarding the merging of the seniority lists arise or become ripe in the future.

B.  <u>CLASS CERTIFICATION</u>

The Union agrees that the requisites for class certification are met in this case, and in fact urges that certification be granted (with certain limitations) *prior* to the granting of summary judgment on any claims.  The Union has failed to show, however, that it would be appropriate to proceed in that fashion, given the due process rights of putative class members.  Accordingly, only the claims of the named plaintiffs will be affected by the entry of summary judgment.

As to the Letter G claim, plaintiffs' motion for certification will be granted.  The Union argues the certification should be limited to injunctive claims only.  Its argument that plaintiffs have not shown how damages can be calculated, however, goes to the second claim for relief, as to which summary judgment is being granted.  Plaintiffs have adequately shown that the process of calculating individual damages under the remaining claim for relief is not a bar to class certification.

III.  CONCLUSION

The Union's motion for summary judgment is granted as to the first claim for relief with respect to all matters alleged therein other than those relating to "Letter G" of the 2015 collective bargaining agreement.  Summary judgment is granted on the second claim for relief, without prejudice to any related or similar claim that may become ripe in the future. Plaintiffs' motion for class certification is granted on the remaining claim only.  The parties shall meet and confer and within 30 days of the date of this order submit a joint proposal for providing notice to the class and otherwise managing further proceedings in this litigation.

**IT IS SO ORDERED**.


Dated: June 16, 2016

_____
RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California