**NOT FOR PUBLICATION**

FILED

SEP 27 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN AIRLINES FLOW-THRU PILOTS COALITION, on behalf of themselves and all others similarly situated; GREGORY RICHARD CORDES, on behalf of themselves and all others similarly situated, | No. 21-16131<br><br>D.C. No. 3:15-cv-03125-RS<br><br>MEMORANDUM* |
| Plaintiffs-Appellants, | |
| v. | |
| ALLIED PILOTS ASSOCIATION; AMERICAN AIRLINES, INC., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted May 13, 2022
San Francisco, California

Before: MURGUIA, Chief Judge, BUMATAY, Circuit Judge, and BAKER,**
International Trade Judge.
Dissent by Chief Judge MURGUIA.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

Plaintiffs, the American Airlines Flow-Thru Pilots Coalition and individual pilots (together, "Flow-Through Pilots"),[1] brought this class action suit against the Allied Pilots Association ("ALPA" or "the union"), a union representing American Airlines pilots. The Flow-Through Pilots allege that ALPA breached its duty of fair representation by discriminating against them in negotiating for seniority credits with their employer, American Airlines. The district court granted the union's motion for summary judgment. We review de novo, *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc), and affirm.

Under causation doctrine applicable in fair representation cases, for union members to recover for their union's breach of the duty of fair representation, they must show that the union's discriminatory action was the but-for cause of their alleged injuries. Here, the plaintiffs presented no evidence that that even if ALPA had not breached its duty as alleged, American would have agreed to the seniority credits. Thus, under the record presented, no reasonable jury could conclude that ALPA's alleged discrimination was the but-for cause of the Flow-Through Pilots' injury—on this record, at least, it would have happened no matter what. And, thus, the Flow-Through Pilots can't establish a triable question of fact for trial as to the cause of their injury.

---

[1] The Flow-Through Pilots are former American Eagle pilots who obtained employment at American Airlines under a "Flow-Through Agreement."

2

Case 3:15-cv-01259-RS Document 52962, Filed 09/27/21, Page 33 of 16

## I.

## A.

"At its most rudimentary level," a union's duty of fair representation requires that the union "make an honest effort to serve the interests of all [its members], without hostility to any." *Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 982 (9th Cir. 2015) (simplified). The duty is a judicially crafted cause of action, first discussed in *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192 (1944). There, the Supreme Court held that a union could not discriminate against its black union members. *Id.* at 204. The union negotiated an agreement with a railroad employer that prevented black railroad workers from obtaining desirable positions. *Id.* at 194–96. As a direct result of the union's agreement, a black railroad worker "was deprived of employment" and "assigned to more arduous, longer, and less remunerative work." *Id*. at 196. The Court held that a union has a "duty to exercise fairly the power conferred upon it [o]n behalf of all those for whom it acts, without hostile discrimination against them." *Id.* at 203.

While its origin is in racial discrimination, we have "made clear that the union's duty to avoid invidious discrimination extends beyond such factors as race or other constitutionally protected categories[.]" *Addington*, 791 F.3d at 984 (simplified). For example, unions "may not juggle the seniority roster for no reason other than to advance one group of employees over another." *Id.* (simplified). So at

3

all times, "a union must act with some legitimate union purpose that rationally promotes the aggregate welfare of employees in the bargaining unit." *Id.* (simplified). It cannot make "[d]ecisions benefitting a majority of the group . . . merely because the losers had too few votes to affect the outcome of an intra-union election." *Id.* at 984–85 (simplified). "To establish that the union's exercise of judgment was discriminatory, a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007) (simplified).

Here, like the district court, we assume that the plaintiffs have made such a showing of a breach of the duty of fair representation—we assume that they could establish at trial that they were similarly situated to ALPA members who received seniority credits and that the union's failure to seek such credits was unrelated to legitimate union objectives. And it is also undisputed on this summary judgment record that plaintiffs suffered an injury—denial of seniority credits.

**B.**

At issue here is what standard of causation union members must satisfy to recover damages for the assumed breach of duty. Based on longstanding precedent, we hold that union members must show that union discrimination was the but-for

4

cause of their alleged injury. Otherwise, they fail to make a claim for damages for any breach of the duty of fair representation.

In *Humphrey v. Moore*, the Supreme Court applied a but-for analysis in a duty of fair representation case. 375 U.S. 335, 351 (1964). There, the Court considered a claim by a union employee of a trucking company that his union harmed him in negotiations with the trucking company. *Id*. at 350. The company was about to absorb certain routes of a rival company whose drivers were represented by the same union. *Id*. at 337. The Court agreed with the trial court that it was "idle speculation to assume that the result *would have been different* had the matter been differently presented." *Id*. at 351 (emphasis added). Thus, the Court held, the union member had not "proved his case" and the claim failed. *Id*.

And in *Hines v. Anchor Motor Freight, Inc.*, the Court stated that "where the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and whether *there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome* of the contractual proceedings." 424 U.S. 554, 568 (1976) (emphasis added).

In a pair of cases, our court looked in depth at the causation standard for duty-of-fair-representation claims. *See Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393

(9th Cir. 1986); *Ackley v. Western Conf. of Teamsters*, 958 F.2d 1463 (9th Cir. 1992).

In *Acri*, a breach of duty case involving a union misrepresentation, we held that "plaintiffs must establish a causal relationship between the [union's] alleged misrepresentations and their injury." 781 F.2d at 1397. "In this context causation would be established by proof that (1) the vote to ratify would have been different had the misrepresentations not been made; and (2) that the company would have acceded to union demands had the vote been different." *Id.* Based on that standard, we held causation was not met because the union members "conceded that [they] could not establish that [the employer] would have given in to their demand to remove the severance pay limit even if the strike had continued" and so there was no evidence that the union caused their injury. *Id.*

In *Ackley*, we applied the same causation standard to a case alleging that a union failed to disclose material information to its members. 958 F.2d at 1472. Once again, we held that union members "must show that (1) absent the misrepresentations, the outcome of the ratification vote would have been different; *and* that (2) had it been different, the company would have acceded to the union's demands." *Id.* We then affirmed dismissing the breach claim because the union members "proffered no evidence whatsoever that [the employer] would have been disposed to agree to more generous terms had the union rejected the proposed [collective bargaining] agreement[.]" *Id.* at 1473.

6

In those cases, we required a showing that the company would have acceded to union demands but for the union's malfeasance. *Acri*, 781 F.2d at 1397; *Ackley*, 958 F.2d at 1472. We thus read *Acri* and *Ackley* to only require, consistent with *Humphrey* and *Hine*s, that the union's actions be the cause-in-fact for any loss of benefits suffered by the plaintiff union members. In practice, this means to avoid summary judgment, plaintiff union members alleging a breach of a duty of fair representation must show a triable issue of fact that the employer would have agreed to the benefits sought by the plaintiffs.

Several of our sister circuits have also required a showing of causation in fact for duty-of-fair-representation claims. Relying on *Humphrey* and *Hines*, the Third Circuit has said that "liability for a labor union's deceptive conduct in breach of the fiduciary duty of fair representation arises only if the breach directly causes damage to an individual or group to whom the duty is owed." *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 (3d Cir. 1977). Similarly relying on *Hines*, the Sixth Circuit says that a "[u]nion is liable for damages only if its breach was a 'but-for' cause of th[e plaintiffs'] damages." *Wood v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 807 F.2d 493, 502 (6th Cir. 1986). For its part, the Seventh Circuit says that *Hines* "suggests that there must be a 'breach of duty by the union' that *also* causes injury in the sense that the employee would have been vindicated but for the union's dereliction." *Camacho v. Ritz-Carlton*

7

*Water Tower*, 786 F.2d 242, 246 (7th Cir. 1986) (Easterbrook, J.) (emphasis in original). And the Eighth Circuit requires proof "that but for [the union's] misrepresentations . . . they would have obtained their" desired benefit. *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574, 580 (8th Cir. 1981); *see also id.* at 580 n.8 ("[C]ourts have held unions not liable for breaches of their duty of fair representation absent evidence that but for the union's conduct the employee would not have been injured."). In sum, to prove a breach of the duty of fair representation against a union, union members must establish the union's alleged improper conduct *in fact* caused their loss of benefits.

## II.

Under the causation-in-fact standard applied in labor cases, the district court did not err in granting summary judgment for ALPA. The Flow-Through Pilots, newly minted American Airlines pilots who previously worked for regional airlines, alleged that the union breached its duty of fair representation because it did not ask American to provide them with "length of service" credits. The Flow-Through Pilots alleged that ALPA failed to do so because of the union's discriminatory animus toward regional airline pilots. Viewing the evidence in the light most favorable to the Flow-Through Pilots, no reasonable jury could conclude that the union's actions caused the Flow-Through Pilots to be denied the "length of service"

8

credits.  *See Momox-Caselis v. Donohue*, 987 F.3d 835, 844 (9th Cir. 2021) (providing the summary judgment standard).

The Flow-Through Pilots offer no evidence that American would have granted them the credits had ALPA asked.  They assert that American had ample resources to grant the service credits.  But it is axiomatic of collective bargaining that employers do not give away benefits simply because doing so would not ruin their balance sheets.  *See* Shaun G. Clarke, Note, *Rethinking the Adversarial Model in Labor Relations: An Argument for Repeal of Section 8(a)(2)*, 96 Yale L.J. 2021, 2022 n.7 (1987) (describing collective bargaining as "a system in which management and labor maintain a strict separation, and approach collective bargaining as competing entities with opposing interests, involved in a struggle over limited resources").  As the district court concluded, just because it was "possible" for American to provide the credits does not create a triable issue that the airline *would* have granted the benefit.

On this record, there is no evidence that American would have agreed to the seniority credits.[2]  Consequently, the Flow-Through Pilots cannot show that ALPA's assumed breach of the duty of fair representation caused them any injury.

---

[2] ALPA offered evidence that it contends demonstrates that American never would have agreed to the seniority credits.  Because the district court correctly placed the burden on the plaintiffs to establish a triable issue that the airline would have so agreed, the court declined to consider whether ALPA's evidence "would have been

* * *

Because no reasonable jury could conclude on this record that the Flow-Through Pilots would have received the "length of service" credits had ALPA sought them, we affirm.

---

admissible or sufficient to prove that American would *not* have granted the credits." Like the district court, we rely solely on the failure of the plaintiffs to carry their burden under *Humphrey* and *Hines* and do not consider ALPA's evidence or whether that evidence, even if admissible, would have been sufficient to *prove* that American would not have agreed to the credits.

FILED

SEP 27 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

American Airlines Flow-Thru Pilots Coalition, et al. v. Allied Pilots Association, et al., No. 21-16131

MURGUIA, Chief Judge, dissenting.

Because I disagree with the causation standard applied by the majority, I respectfully dissent.

"A union's duty of fair representation grows from its statutory right to exclusive representation." *Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 804 (9th Cir. 2017). A union has a "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). To establish that a union has "discriminat[ed]" in violation of its duty, plaintiffs "bear the burden to demonstrate 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" *Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 987 (9th Cir. 2015) (quoting *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 880 (9th Cir. 2007)). This inquiry looks to the "subjective motivation of the [u]nion officials." *Simo v. Union of Needletrades*, 322 F.3d 602, 618 (9th Cir. 2003) (citation omitted).

The majority errs in applying a causation standard set forth in two union *misrepresentation* cases, *Acri v. International Association of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986), and *Ackley v. Western*

1

*Conference of Teamsters*, 958 F.2d 1463 (9th Cir. 1992). That standard requires a showing that the employer would have acquiesced to the plaintiffs' demands if not for the union's misrepresentation. *Acri*, 781 F.2d at 1397; *Ackley*, 958 F.2d at 1472. It "has the practical effect, in almost every instance, of precluding union members from recovering against their unions . . . ." *Acri*, 781 F.2d at 1399 (Reinhardt, J., concurring). But the rationale for this "difficult" standard is that "the union's internal election and rulemaking processes"—not the courts—"are the proper vehicle" for redressing allegations that a union's misrepresentation has affected the outcome of a ratification vote by members. *Ackley*, 958 F.2d at 1472.

Conversely, in a union *discrimination* case like this one, the aggrieved union members are part of a minority that is, by definition, unable to redress union wrongdoing by swaying the outcome of a union election or rulemaking. *See Addington*, 791 F.3d at 984–85 (noting that the union may discriminate by disfavoring a group with "too few votes to affect the outcome of an intra-union election") (citation omitted). Further, minority groups that have suffered discrimination are often unable to prove, as required under the *Acri* and *Ackley* standard, that their employer would have been willing to extend to them the same benefits that it afforded the majority. *See, e.g.*, *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 195 (1944) (employer agreed to union's racially discriminatory proposal).

2

Moreover, the majority's decision to extend the *Acri* and *Ackley* standard to

union discrimination claims is inconsistent with our precedent. Indeed, our court

has never applied the onerous *Acri* and *Ackley* causation standard in a published

union discrimination case: we have never required that plaintiffs show that their

employer would have refused to discriminate if not for the union's actions. Nor, for

that matter, has the Supreme Court.[1] For example, the Supreme Court's *Steele*

decision held that a union failed in its duty "to represent non-union or minority union

members of the craft without hostile discrimination, fairly, impartially, and in good

faith" when it entered a collective bargaining agreement that treated black railway

workers less favorably. 323 U.S. at 195, 204. But under the majority's standard,

the union's suit in *Steele* would have failed. The black workers could not have

established that their employer would have been willing to accede to their demands

---

[1] The majority's reliance on *Humphrey v. Moore*, 375 U.S. 335 (1964), and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976), is misplaced. The majority cites language in *Humphrey* concerning an inapplicable context: whether employees were deprived of a fair hearing by having inadequate representation. *See* 375 U.S. at 350–51. And whereas union discrimination is presumed in this case, in *Humphrey*, the Supreme Court emphasized that the union took its position "without . . . arbitrary discrimination." *Id.* at 349. *Hines* too presents a different scenario and considers causation in the context of the employee grievance process. 424 U.S. at 567–68. But, in such circumstances, the question of whether an employer would have inevitably rejected a grievance goes to the merits of the grievance. Cases involving union discrimination are different because, as discussed, the employer's conduct could also be discriminatory. *See, e.g.*, *Steele*, 323 U.S. at 195–96.

for equality. Their employer not only agreed to the discriminatory proposal, but "ignored" the black employees' "[p]rotests and appeals" for relief. *Id.* at 195–96.

Consequently, in my view, the rationale of *Acri* and *Ackley* does not apply to allegations of union discrimination, and extending their causation standard to such allegations will tend to eliminate meritorious claims and leave afflicted minority groups without remedy.

Though no Ninth Circuit precedent specifically addresses the causation standard applicable to union discrimination cases, our precedent does instruct that "general tort principles of causation usually govern statutory discrimination cases except when there is a statutory command to the contrary." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1167 (9th Cir. 2013). I would accordingly abide by those principles here, under which "plaintiffs bear the burden of demonstrating that the defendant's conduct caused some harm suffered by the plaintiffs." *Id.* at 1168. Plaintiffs can do so "by proving that the defendant's wrongful conduct was a 'substantial factor' in bringing about the harm in question." *Id.* (quoting *Restatement (Second) of Torts* § 431(a) (1965) ("*Restatement*")). To constitute a "substantial factor," the defendant's conduct must ordinarily be a but-for cause of the plaintiff's harm. *See Restatement* § 431 cmt. a. But there is an "excep[tion]." *Id.* When there are multiple sufficient causes—meaning that "two forces are actively operating" which were independently sufficient to cause the

4

plaintiff's harm—then the defendant's conduct may be a "substantial factor." *Id*. §

432(2).

Accordingly, "[t]he plaintiff doesn't have to prove a series of negatives; he

doesn't have to 'offer evidence which positively exclude[s] every other possible

cause of'" his injury. *Pac. Shores*, 730 F.3d at 1168 (quoting *BCS Servs., Inc. v.

Heartwood 88, LLC*, 637 F.3d 750, 757 (7th Cir. 2011)). Instead, "[o]nce a plaintiff

presents evidence that he suffered the sort of injury that would be the expected

consequence of the defendant's wrongful conduct, he has done enough to withstand

summary judgment on the ground of absence of causation." *Id.* (quoting *BCS Servs.*,

637 F.3d at 758). This standard is appropriate because "[c]ausation is an intensely

factual question that should typically be resolved by a jury." *Id.*

And because general tort principles dictate that "plaintiffs are 'not required to

eliminate entirely all possibility that the defendant's conduct was not a cause,'" *id.*

(quoting *Restatement* § 433B, cmt. b), it follows that under ordinary tort principles

plaintiffs alleging union discrimination do not have to eliminate the possibility that

their employer independently caused their injury. Indeed, this court has held that a

union may cause a minority group to be treated less favorably by *declining to

propose* that the employer adopt a neutral seniority agreement, even if we could

"never be certain whether efforts to implement" such a proposal "through a

5

collective bargaining agreement with [the employer] would have succeeded." *Addington*, 791 F.3d at 986, 991.

Here, the Flow-Through Pilots have demonstrated that they were denied seniority credits that other allegedly similarly situated (but favored) union members received. The allocation of seniority credits required the approval of both ALPA and American Airlines. ALPA's presumed discrimination and American Airlines' purported opposition to giving regional pilots seniority credits were each, on their own, enough to produce the Flow-Through Pilots' loss of credits. Therefore, I would conclude that the doctrine of "multiple sufficient causes" applies, and the Flow-Through Pilots do not need to show that American Airlines would have granted them seniority credits but for the union's discrimination. The Flow-Through Pilots have "done enough to withstand summary judgment on the ground of absence of causation." *Pac. Shores*, 730 F.3d at 1168 (quoting *BCS Servs.*, 637 F.3d at 758).

No federal appellate court has ever applied the *Acri* and *Ackley* standard to a union discrimination claim, and I would not do so here. I would reverse the district court's grant of summary judgment to the ALPA and remand for further proceedings.